Illinois Building Authority, a Body Corporate and Politic, Plaintiff-Appellee, v. Stanley Dembinsky, Jr., and Frances E. Dembinsky, His Wife, et al., Defendants-Appellants.

Gen. No. 68–27.

Second Judicial District.

November 8, 1968.

Claude Calloway and Hall, Meyer, Fisher, Holmberg, Snook and May, of Waukegan, for appellants.

Donald T. Morrison and Austin L. Wyman, of Waukegan, for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court.

This is an eminent domain proceeding brought by the Illinois Building Authority for the acquisition of 15.37 acres of land located in Lake County, between Waukegan and Zion, and near Lake Michigan. The property adjoins the Illinois Beach State Park, and the condemnation was sought to extend that facility.

The matter was tried before a jury, which returned a verdict awarding the defendants the sum of $11,500 as compensation for the land taken. The trial court entered judgment on this verdict and the defendants appealed. They contend that the amount awarded was inadequate, and that the inadequacy was the result of the admission of improper evidence and of prejudicial argument by counsel for the plaintiff.

The property was acquired by the defendants in 1953. It was zoned for agricultural use but, at all times, was used for a sand mining operation as a nonconforming use. The use as a sandpit had been continuous, but its use apparently had been sporadic since approximately 1957. It was estimated that approximately 10 of the 15 acres still remain to be mined. Both parties agree that the highest and best use of the property is for a sand mining operation.

The plaintiff produced two expert witnesses who gave their opinion of the value of the property as being between $7,500 and $8,000—or between $500 and $530 per acre. No question was raised concerning either their qualifications as experts, or the factors upon which they based their opinions.

These experts and other of the plaintiff's witnesses offered testimony relative to two sales of land, which testimony was admitted in evidence as being sufficiently similar to the subject property to be relevant for the jury's consideration in the determination of the value of the defendants' land. The defendants contend that the trial court committed reversible error by admitting evidence of these sales.

 The trial court is permitted wide discretion in determining whether another sale is sufficiently similar in nature to be relevant in determining the value of property which is being condemned. Illinois Bldg. Authority v. Dembinsky, 90 Ill App2d 451, 455, 456, 233 NE2d 38 (1968). To be admissible in evidence, other sales should be sufficiently similar in character and locality to provide the jury some reasonable basis for comparison. No specific rule may be laid down to determine the degree of similarity that must exist for evidence of a sale or sales to be admissible. The determination must be made in each case by the trial court within the proper limits of its discretion upon the particular facts and circumstances presented. There are bound to be dissimilarities between the property sought to be condemned and any other property, but if there is a reasonable basis for comparison, such dissimilarities are to be weighed by the jury and affect the weight and value of the testimony, rather than its competency. Parcels of property may be similar for purposes of fruitful comparison, even though each possesses various points of difference. City of Evanston v. Piotrowicz, 20 Ill2d 512, 522, 170 NE2d 569 (1960); Forest Preserve Dist. of Cook County v. Lehmann Estate, Inc., 388 Ill 416, 428, 429, 58 NE2d 538 (1945); Park Dist. of Highland Park v. Becker, 60 Ill App2d 463, 470, 208 NE2d 621 (1965).

██ The first sale was that of property known as the Doyle property, located approximately six miles from the subject property. This sale took place in 1965 and consisted of 18 to 19 acres. At the time of this sale the land was vacant, except for a shed. It had been used for a sand mining operation and was about one-half depleted, or mined; and had a possibility for such use in the future. It adjoined a railroad track and access to it was by means of a long lane. The property sold for $500 an acre.

The date of condemnation of the subject property was August 16, 1965. The Doyle sale took place in 1965. Both tracts of land had been used for sand mining and were only partially depleted; each had means of access through a lane over other property; each adjoined a railroad track; they were within three or four acres of being the same size; and both were zoned for agricultural use. The defendants objected to the sale on the grounds that the Doyle property was an "abandoned" sandpit and that no soil borings had been taken to indicate the depth of the sand. However, the testimony indicated that the Doyle property had the potential for future use for sand mining. Also, an issue was made of the degree of use that had been made of the subject property for sand mining purposes since the year 1957.

In the light of this testimony, we do not believe that the trial court abused its discretion in permitting evidence of this sale. It appears sufficiently similar in general to be relevant, and the differences to which the defendants have referred are matters affecting the degree of comparability and the weight which the jury should give to the evidence of the sale.

The defendants objected strenuously to the evidence of the sale of a tract of land referred to as the Fuller tract. This sale took place in October of 1964 and was of approximately 40 acres of land which, at the time, was being used for agricultural purposes. The sale price was $750 per acre and this land was also approximately six miles from the property in question. The purchaser converted the use of the land to a sand and gravel operation.

█ No objection was made to the evidence of this sale at the time it was offered and admitted. This alone is sufficient to answer the defendants' contention of error in this court. People v. Sinclair, 27 Ill2d 505, 508, 190 NE2d 298 (1963); Forest Preserve Dist. of Cook County v. Lehmann Estate, Inc., supra, 429, 430.

The defendants now suggest that they made no objection to the evidence of this sale because at the time the evidence was admitted they believed it to be evidence of the sale of mere farmland and thus not prejudicial to them. This ignores the fact that prior to the time that proof of the sale was offered in evidence, the plaintiff had elicited testimony and presented evidence that the land was presently being used as a sand and gravel pit; and that prior to trial, the plaintiff had furnished the defendants with detailed information regarding this sale, as well as others, which it intended to use at the trial.

Under these circumstances, the defendants' suggestion that the plaintiff sought to introduce evidence of the sale of the Fuller tract on the basis that it was the sale of farmland, which in fact was not similar to the subject property, or that the trial court admitted it into evidence on this basis, severely taxes our credulity.

■ The defendants contend, further, that the trial court erred in permitting Mr. Fuller—after the evidence of the sale was admitted—to testify that at the time of the sale of the land, he was aware that there was sand and gravel on the property. Mr. Fuller testified, over objection of the defendants, that he had previously sold some adjoining land to Commonwealth Edison Company, and that the company had taken some soil samplings at the time, which indicated the sand and gravel content of the land. He also testified that he knew of these tests and was aware of them at the time of the subsequent sale. The evidence was offered to exhibit the state of Mr. Fuller's mind with reference to what he believed the land to be useful for at the time of the latter sale and not to show the results of the tests made by Commonwealth Edison Company. The jury was so advised. This testimony, so limited, was not objectionable as hearsay. Cleary, Handbook of Illinois Evidence, 2nd Ed, §§ 17.1 and 17.4.

This testimony was relevant in establishing that Fuller was aware of the potential of his land for use in a sand and gravel operation, at the time he made the sale. This factor was significant in that the property was not at the time being used as a sand or gravel pit, and the sand or gravel was not apparent on the property. If Fuller, the seller, were completely unaware of the potential of the land, then the price at which he would be willing to sell might be considerably altered. Since this sale of apparent farmland was offered as evidence of the value of property useful as a sand and gravel pit, the then knowledge of the seller, Fuller, of the capabilities of his land for this use was pertinent. The purpose of this testimony was to establish the state of Fuller's mind at the time of the sale. It was original evidence; Fuller was available for cross-examination on this issue, and his testimony was not hearsay.

The defendants further contend that because this court in Illinois Bldg. Authority v. Dembinsky, supra, upheld the action of the trial court in refusing to admit evidence of this same sale—the Fuller tract—the trial court should be reversed in this case for admitting evidence of this sale. The properties which were the subject of condemnation in the two lawsuits were not the same, and we did not hold in the first Dembinsky case that the sale was not sufficiently similar to the property there under consideration to be admissible. We there held that under the evidence set forth in the record, the trial court did not abuse its discretion in denying admission of the sale, and we observed that there was no evidence that the Fuller sale was in any manner predicated upon the presence of mineral deposits.

The evidence in the instant case apparently suggested to the trial court that the Fuller sale was predicated on the similarities which existed between the two parcels even though the similarity would not have been readily apparent from a view of the Fuller land at the time of its sale. We repeat: there was no abuse of discretion by

66

the trial court in admitting the evidence of the Fuller sale in this case.

■ The consideration received in connection with another sale was mentioned by a witness, but evidence of the sale was ultimately held not to be admissible. We have examined the record and are satisfied that the price was inadvertently mentioned by the witness. The jury was instructed to disregard his statement and was given a cautionary instruction in this respect. We are satisfied that the defendants were in no manner prejudiced by this incident.

■ The defendants also contend that counsel for the plaintiff made prejudicial comments in his closing argument. Counsel for the plaintiff suggested that the real issue before the jury was to determine who was, and who was not, telling the truth. There was a wide variance in the range of valuation as testified to by the witnesses. The plaintiff's witnesses testified to a valuation of from $500 to $750 per acre and the defendants' witnesses to a valuation of between $6,000 and $7,000 per acre. In his argument, plaintiff's counsel suggested that the variation in the testimony pertaining to the value of the land reflected a difference in the credibility of the witnesses; and that the jury should not compromise in reaching its verdict, but rather, should seek the truth, which in turn would determine the value of the land.

In Commonwealth Elec. Co. v. Rose, 214 Ill 545, 73 NE 780 (1905), on pages 561 and 562, the court stated:

"Counsel may arraign the conduct of the parties, and impugn, excuse, justify, or condemn motives, so far as they are developed in evidence, or assail the credibility of witnesses when it is impeached by direct evidence, or by inconsistency, or incoherency of their testimony, their manner of testifying, their appearance upon the stand, or by circumstances. 'He may argue such conclusions from the testimony

67

as he pleases, provided he does not misquote witnesses.' (2 Ency of Pl & Pr p 716). It has been said: 'Just and fierce invective, when based upon the facts in evidence and all legitimate inferences therefrom, is not discountenanced by the courts.' (2 id. p 747)."

We do not think that the conduct of counsel went beyond the limits approved by the court in the foregoing decision. In his argument, plaintiff's counsel referred to the statements and evidence on which he was basing his conclusions and we do not find them improper.

We also note that the defendants offered no objection to the argument of the plaintiff's counsel, and we do not find that his argument was so unwarranted and seriously prejudicial as to permit our review and reversal in the absence of objections in the trial court. Belfield v. Coop, 8 Ill2d 293, 313, 134 NE2d 249 (1956); City of Chicago v. Vaccarro, 408 Ill 587, 600, 97 NE2d 766 (1951); Forest Preserve Dist. of Cook County v. Kercher, 394 Ill 11, 25, 66 NE2d 873 (1946); Redmond v. Huppertz, 71 Ill App2d 254, 259, 217 NE2d 85 (1966).

■ ■ The testimony as to value was in conflict. The jury viewed the property in question and its verdict was within the range of the testimony. Absent reversible error in the trial, the verdict of a jury will not be upset unless it is clearly shown that it resulted from passion, prejudice or palpable mistake. County of Cook v. Colonial Oil Corp., 15 Ill2d 67, 69, 70, 153 NE2d 844 (1958); Park Dist. of Highland Park v. Becker, supra, 468. We find no reversible error in the trial of the case and no showing in the record that the verdict was the result of passion, prejudice or palpable mistake. Consequently, the judgment of the trial court is affirmed.

Judgment affirmed.

ABRAHAMSON, P. J. and SEIDENFELD, J., concur.